NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-33

ADAM JAMES BRADLEY

vs.

COMMONWEALTH OF MASSACHUSETTS & others[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Adam Bradley, appeals from a judgment dismissing his complaint for failure to state a cognizable claim.  Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  The fundamental basis for the dismissal was that Bradley's civil claims, if successful, would provide grounds to collaterally attack his 2017 conviction of murder in the first degree.  Two important decisions, Heck v. Humphrey, 512 U.S. 477 (1994) (applicable to Bradley's claims under 42 U.S.C. § 1983), and

---

[1] Massachusetts State Police, David Marc Solet, Timothy F. MacDougall, Eric Mitza, Cara Krysil, Anthony DeLucia, Troop Duty Officer John Doe, and Marian T. Ryan, individually and in their official capacities.

Tinsley v. Framingham, 485 Mass. 760 (2020) (applicable to Bradley's various State law claims), establish that civil actions may not be so employed -- that is, that Bradley may not prosecute a civil action that would demonstrate the invalidity of, or undermine, his prior criminal conviction.  As we agree that Heck and Tinsley dictate the dismissal of Bradley's claims, we affirm the dismissal.

Background.  In 2012, Quintin Koehler was shot and killed in a home in Billerica.  The subsequent criminal investigation led to indictments charging the plaintiff Bradley and others with Koehler's murder.  In 2017, a jury convicted Bradley of murder in the first degree.  Bradley's direct appeal from his conviction is pending in the Supreme Judicial Court. Commonwealth v. Bradley, SJC-13159.  Bradley remains in prison.

Bradley filed the complaint in this case in February 2019.[2] The gist of the allegations is that during the murder

---

[2] This is not the only civil complaint Bradley has filed against State officers; there are at least two others.  In Bradley v. Turco, C.A. No. 1881CV02561 (filed August 2018), Bradley sued the Commonwealth and multiple State officers, generally based on alleged civil rights violations while Bradley was incarcerated.  In Bradley v. Frost, C.A. No. 1981CV00555 (filed February 2019), Bradley sued the Commonwealth, the town of Billerica, and multiple State officers, based on alleged assaults Bradley suffered during incarceration.  See Bradley v. Commonwealth, 104 Mass. App. Ct. 1109 (2024).

As a result of these actions, the defendants have argued, as an alternative ground for dismissal, that Bradley has improperly split his claims against these defendants and that dismissal is required under Mass. R. Civ. P. 12 (b) (9), as

2

investigation, two prosecutors and several Massachusetts State Police officers destroyed exculpatory evidence and fabricated a report concerning a fingerprint analysis of rubber gloves found near the murder scene.  The major DNA profile found on the gloves was a statistical match to Bradley's DNA profile. However, in his complaint in this case, Bradley alleges that fingerprint testing of the gloves yielded only one fingerprint, which was not his.  Bradley further alleges that the report of this fingerprint analysis was destroyed, and that an altered report that showed no fingerprints on the gloves was produced in discovery.  Bradley also complains that several other investigative reports, known as crime scene services section reports, were not produced to him during discovery.

The complaint alleges violations of the Federal and Massachusetts Constitutions and various State laws.  More specifically, Bradley claims that the defendants, members of the State prosecutorial team, violated the Federal due process clause by withholding material exculpatory evidence.  See Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Commonwealth v. Rodriguez-Nieves, 487 Mass. 171, 177 (2021) ("The Commonwealth has a constitutional duty, grounded in the defendant's right to

_____

amended, 450 Mass. 1403 (2008).  As we conclude that dismissal was appropriate under Tinsley, we do not reach the Rule 12 (b) (9) issue.

3

due process, to disclose in a timely manner material, exculpatory evidence over which it has possession, custody, or control"). The defendants are the Commonwealth of Massachusetts, prosecutors, and members of the State Police who were involved in the investigation of the murder, including those who conducted the fingerprint tests, and allegedly fabricated test results. The complaint includes Federal claims under 42 U.S.C. § 1983, as well as State law claims under the Massachusetts Civil Rights Act (MCRA), the Massachusetts Tort Claims Act (MCTA), and common law claims including tortious interference with contractual relations, as well as a claim for declaratory relief.

As indicated, a Superior Court judge dismissed all of Bradley's claims, citing in particular the doctrine of Tinsley, which states that Bradley may not bring a civil action that can be used to collaterally attack his criminal conviction. 485 Mass. at 766. Bradley appeals, arguing that his civil action is not a collateral attack on his murder conviction and does not meet the test set forth in Tinsley, supra, but instead seeks tort damages for, among other things, emotional distress caused by the defendants' wrongful acts.

Discussion. We agree that this case is controlled by the decisions in Heck and Tinsley. In Heck, the plaintiff, convicted of manslaughter in the death of his wife, filed suit

4

under § 1983, alleging that various State officials "had engaged in an 'unlawful . . . investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." 512 U.S. at 478-479. The United States Supreme Court adopted the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486. The Court accordingly held that § 1983 damages actions that "necessarily require the plaintiff to prove the unlawfulness of his conviction" must be dismissed, unless the state criminal conviction had "already been invalidated." Id. at 486-487. The Court went on to state the test for dismissal thusly: dismissal is required where "a judgment [in the § 1983 claim] would necessarily imply the invalidity of [the] conviction . . . ." Id. at 487. Importantly, applying the above standard, the Supreme Court affirmed the dismissal of Heck's § 1983 claims. Id. at 490.

The Supreme Judicial Court's Tinsley decision came after, and in light of, Heck. In Tinsley the plaintiff had been convicted of resisting arrest, among other offenses, during a traffic stop, and his civil claims asserted that the arresting officers had used excessive force, both before and after Tinsley

5

was removed from his vehicle.  485 Mass. at 761, 768.  The Court did not "adopt the holding in Heck in its entirety," but did "adopt . . . its guiding principle . . . ."  (footnote omitted). Id. at 761.  The court accordingly held that the plaintiff's civil claims could proceed only if

> "the [civil] action is based on facts . . . other than those necessary to sustain the plaintiff's criminal conviction and where the plaintiff demonstrates that the civil action, if successful, would not necessarily undermine the validity of the plaintiff's prior criminal conviction" (emphasis added).

Id. at 766.

Applying this standard, the Supreme Judicial Court held that Tinsley's claims alleging the use of excessive force prior to his arrest had to be dismissed, as Tinsley had been convicted of resisting arrest, and thus the jury necessarily found that Tinsley was not acting in lawful self-defense when using force against an officer up to the point of his arrest.  Id. at 770. Tinsley's claims alleging excessive force after being removed from his vehicle, however, were allowed to proceed, because those actions occurred after Tinsley's arrest.  Id. at 771.

Heck and Tinsley dictate the dismissal of Bradley's claims here.  First, as to Bradley's § 1983 claims, we emphasize that the claims in Heck were not materially different than Bradley's claims here.  See Heck, 512 U.S. at 479.  Bradley alleges that he was the subject of an unlawful investigation in which public

6

officials, among other things, destroyed exculpatory evidence. The plaintiff in Heck made essentially the same claim, among others -- that prosecutors and police "knowingly destroyed" exculpatory evidence. 512 U.S. at 479. The Supreme Court affirmed the dismissal of those claims in Heck; Heck thus holds that such claims of knowing destruction of evidence could -- and in Heck did -- meet the Supreme Court's test that the claims would "necessarily imply the invalidity of the conviction." Id. at 487.

Moreover, it is readily apparent that if Bradley were to succeed in this case, the facts he would establish would necessarily call into question material facts that were presented to the jury as evidence of his guilt in his murder trial. If Bradley succeeded in showing (1) that the Commonwealth conducted a fingerprint analysis of the rubber gloves that showed that the gloves did not contain Bradley's fingerprints, but did contain the fingerprint of someone else, (2) that the report of the fingerprint test result was destroyed, and (3) that a different, fabricated, test result was produced, such evidence undoubtedly would have been material and exculpatory. The match of the DNA evidence retrieved from the rubber gloves to Bradley's DNA was undoubtedly significant. Consequently if, as Bradley asserts, forensic testing of the gloves revealed a fingerprint that was not his, such evidence

7

could have been material to the jury's evaluation of the DNA evidence.

In arguing that his civil claims should survive the Heck and Tinsley case law, Bradley argues that a lesser standard should apply -- one that would make it more easy to avoid dismissal under those cases. Bradley argues that his civil claims should survive if a "rational trier of fact could have found each element of [his] crime charged independent of the misconduct and procedural improprieties [he alleges]." Put differently, Bradley is suggesting that his civil claims survive if there was sufficient evidence of his guilt independent of the evidence that was tainted by the alleged illegal investigative conduct. And, Bradley argues, in his case there was sufficient evidence to convict him of murder, independent of the DNA evidence on the gloves, so his civil case challenging that glove evidence should be allowed to proceed. Bradley's argument, however, does not state the proper test -- the question under Heck is whether a successful result in Bradley's civil case would "necessarily imply the invalidity of [Bradley's] conviction." 512 U.S. at 487. A claim that calls into question important evidence that was presented during the criminal trial may "imply the invalidity" of that conviction, even if the defendant could have been convicted without it. Perhaps the most telling indication that the Heck test is met in Bradley's

8

case is that, as noted above, the Heck Court dismissed claims very similar to Bradley's. See Heck, supra at 479. The Heck Court did not pause to analyze whether there would have been sufficient evidence to convict Heck independent of the evidence called into question by Heck's claims.

Similarly, Bradley's State law claims must be dismissed under Tinsley. The Tinsley test is whether Bradley's civil claims, if successful, would "necessarily undermine the validity of [his] prior criminal conviction."[3] 485 Mass. at 766. For the same reasons stated above, the facts Bradley alleges, assuming hypothetically they were established, would "necessarily undermine" Bradley's conviction.[4] Id.

---

[3] We acknowledge that the language of the test in Heck differs slightly from the language in Tinsley. We also acknowledge that Tinsley in some places states the test in different language -- in particular, it uses "necessarily challenge" rather than "necessarily undermine." See, e.g., Tinsley, 485 Mass. at 762. Whatever these differences in language may lead to in some other case (if anything), the differences in language do not impact the outcome in this case.

[4] We of course do not opine on what result might obtain if, for example, such facts were in some way established, and thereafter presented in a motion for new trial regarding Bradley's murder conviction.

9

The above analysis applies to Bradley's § 1983 claims, and to each of the State law claims that Bradley brings in this case.  The matter thus was correctly dismissed.

Judgment of dismissal
  affirmed.

By the Court (Vuono,
  Englander & Hodgens, JJ.[5]),

Clerk

Entered:  December 20, 2024.

---

[5] The panelists are listed in order of seniority.